UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRYAN VIVAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-02626-TWP-MG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. (Dkt. 1.)  In 2019, *pro se* Petitioner Bryan Vivas ("Vivas") pled guilty to six counts of shipping and transporting child pornography and one count of possessing child pornography.  He is serving concurrent, 118-month prison sentences on each count.  In his motion for relief under 28 U.S.C. § 2255, Vivas asks the Court to find that he pled guilty without effective assistance from counsel and vacate his plea and sentence.  For the reasons discussed below, Vivas' Motion is **denied**, this action is dismissed with prejudice, and no certificate of appealability will issue.

I. **LEGAL STANDARD FOR § 2255 MOTION**

A motion filed pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence.  *See Davis v. United States*, 417 U.S. 333, 343 (1974).  A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28

U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II.  FACTUAL BACKGROUND

A grand jury indicted Vivas in January 2018 on seventeen counts of shipping and transporting child pornography and one count of possessing child pornography. *United States v. Vivas*, Case No. 1:18-cr-00004-TWP-DML-1 ("Crim. Dkt."). (Crim. Dkt. 1.)  Sixteen months later, he signed a plea agreement. (Crim. Dkt. 45.)  At his change of plea hearing, Vivas agreed to the stipulated factual basis read into the record by the Assistant United States Attorney assigned to this case. (Crim. Dkt. 68 at 23-31.)  In summary, Vivas agreed to the following:

In March 2014, an email containing child pornography was sent to 13 email addresses. One of the email addresses was an undercover account maintained by law enforcement officers, and one was crastrillo23@yahoo.com. *Id*. Sexually explicit pictures of young girls were attached to the message, which included a request to "trade" videos or pictures. *Id*. John Pirics, a Carmel, Indiana police detective and Homeland Security Investigations Task Force officer ("Officer Pirics"), worked with Yahoo! to trace the crastrillo23 address to an IP address, and then with AT&T to trace the IP address to Vivas. *Id*. AT&T provided an address in Carmel for Vivas, and Officer Pirics confirmed the address was Vivas' residence through public records searches. *Id*. Officer Pirics served on child exploitation task forces operated by Hamilton County (Indiana) and Homeland Security Investigations. He obtained a search warrant, which was executed on March 9, 2015. *Id*. Officer Pirics interviewed Vivas during the search, and Vivas admitted that he

downloaded child pornography from websites, then sent those images to himself and others as email attachments. *Id*.

Officer Pirics obtained the search warrant in this Court from Magistrate Judge Dinsmore. (Crim. Dkt. 22-1.) The warrant application included an affidavit describing the March email and the investigatory steps Officer Pirics used to connect that email to Vivas. *Id.*

Vivas initially retained attorney Harold Ansell ("Mr. Ansell"). (Crim. Dkt. 12.) On June 11, 2018, Mr. Ansell filed a Motion to Suppress seeking to suppress evidence uncovered in the search. Mr. Ansell argued the search warrant was issued without probable cause because at the time he requested it Officer Pirics knew only that one email containing child pornography had been *sent* to the address traced to Vivas. (Crim. Dkt. 22 at 5–6.) Now-retired Judge William T. Lawrence held an evidentiary hearing on August 6, 2018, then denied the motion two weeks later. (Crim. Dkts. 33, 92.) Judge Lawrence assumed for the sake of argument that there was not probable cause to issue the warrant but found that, in any event, the searching officers could have objectively and reasonably believed the warrant was based on probable cause. (Crim. Dkt. 33 at 5 (applying *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).)

In February 2019—six months after Judge Lawrence denied the suppression motion—Vivas fired Mr. Ansell and replaced him with attorney Charles Hayes. (Crim. Dkts. 40, 41.) Three months later, the parties executed the plea agreement. (Crim. Dkt. 45.) As part of the plea agreement, the Government agreed that Vivas was entitled to a two-level departure under the sentencing guidelines for acceptance of responsibility. *Id.* at 16 ¶ 39(g). The parties explicitly agreed that Vivas "**did not** timely notified (sic) the Government of Defendant's intention to enter a plea of guilty, and thereby **did not** permit the Government and the Court to allocate their resources efficiently. Accordingly, the Government **does not** intend to file a motion pursuant to

3

U.S.S.G. § 3E I .l (b) requesting that the Court decrease the offense level by one (l) additional level." *Id.* at ¶ 39(h). (emphasis in original). The Government agreed to recommend a prison sentence no longer than 121 months. *Id.* at ¶ 13(a).

During the sentencing hearing, the Court asked whether the Government would move for the third acceptance-of-responsibility reduction, and Ms. Mindrum, counsel for the Government, answered affirmatively—contrary to the plea agreement. *Id.* at 6:3–8. After the Court offered an opportunity to review the plea agreement, Ms. Mindrum clarified that the Government would not be moving for the additional reduction, and Mr. Hayes confirmed that was their agreement. (Crim. Dkt. 7 at 6:12–7:18).

On September 18, 2019, after hearing the parties arguments concerning the sentence to be imposed, the Court sentenced Vivas to 118 months—just below the advisory sentencing guidelines range. *Id*. at 7:19–23, 22:15–24.)

### III.  **DISCUSSION**

In his § 2255 motion, Vivas argues that his attorneys failed to provide the effective representation the Sixth Amendment guaranteed him. First, he argues that Mr. Ansell failed to cite relevant case law and evidence in support of the Motion to Suppress. Second, he argues that Mr. Hayes erred by failing to insist that the Government move for the third acceptance-of-responsibility reduction at the sentencing hearing.

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot

4

establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of *Strickland*, the petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up).

A.      **Suppression Motion**

In denying Vivas' Motion to Suppress, Judge Lawrence assumed for the sake of argument "that there was not, in fact, probable cause to issue the warrant." (Crim. Dkt. 33 at 5.) "However," Judge Lawrence continued, "even if there was not sufficient probable cause for the search warrant to be issued, suppression would be appropriate 'only if the officers . . . could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id.* (quoting *United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1982)).

> Judge Lawrence found that Vivas could avoid this good faith exception
>
> only if 'courts previously have clearly held that a materially similar affidavit failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand, [or] the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'

*Id.* at 6 (quoting *United States v. Woolsey*, 535 F.3d 540, 548 (7th Cir. 2008)). Judge Lawrence observed that Vivas had "not cited . . . a case in which a court has held that a materially similar affidavit failed to establish probable cause under facts that are indistinguishable from the facts at hand." *Id.* He also found that the probable cause affidavit was not obviously deficient because it

5

included evidence regarding the officer's experience and training and the contents and number of recipients of the email sent to Vivas. *Id.* at 6–7. Judge Lawrence also noted that the suppression hearing record included Officer Pirics' testimony that he had obtained search warrants on similar evidence before. *Id.*

Vivas mounts two attacks on Mr. Ansell's approach to the good faith exception. First, he identifies a Seventh Circuit precedent he suggests dealt with a materially similar affidavit and indistinguishable facts. Second, he identifies a line of evidence he believes would have revealed the utter deficiency of the warrant application. Had Mr. Ansell utilized this factual and legal support, Vivas contends, the suppression motion would have been granted, and he would have proceeded to trial in a favorable position rather than plead guilty. For the reasons discussed below, neither argument entitles Vivas to § 2255 relief.

1. *United States v. Pappas*

Judge Lawrence denied the motion to suppress in part because Vivas failed to cite a case "in which a materially similar affidavit failed to establish probable cause." (Crim. Dkt. 33 at 6.) Vivas now argues that Mr. Ansell had such a case at his disposal – *United States v. Pappas*, 592 F.3d 799 (7th Cir. 2010) – and fell below the standard of effective representation by failing to cite it. But *Pappas* did not concern a materially similar affidavit that failed to establish probable cause. In *Pappas*, the Seventh Circuit "disagree[d]" that the officer's affidavit "was so lacking in probable cause that the officers could not rely upon it in good faith." *Id.* at 803. Nothing in *Pappas* states that the officer's affidavit fell short of establishing probable cause. Vivas cannot show that Mr. Ansell performed deficiently by failing to cite another case where suppression was denied—much less that citing such a case would increase his probability of success.

### 2. Failure to Consult Prosecutor

Vivas next argues that the suppression hearing record shows that Officer Pirics did not "consult prosecutors prior to obtaining the warrant" and "admitted that his failure to consult was purposeful because the prosecutor might find the warrant deficient." (Dkt. 11 at 10.) This, Vivas argues, is evidence of bad faith that Mr. Ansell unreasonably failed to emphasize in seeking suppression of the search evidence.

But this argument finds no support in the record. Vivas does not cite to any portion of the record in support of his argument that Officer Pirics admitted he intentionally applied for his search warrant without consulting a prosecutor. *Id.* Earlier in his brief, Vivas states that during the suppression hearing Officer Pirics "explained why he did not go to the prosecutor before applying for the warrant," then quotes the following exchange:

> Q  You thought that the prosecutor in Hamilton County might say, "No, we don't have enough"?
>
> A  Yeah, I didn't know what they would -- if they would want to outright it or not.
>
> Q  Did you think it was a close call?
>
> A  Did I think it was a close call? For Hamilton County, yeah. I didn't know if they would want an outright arrest or if they would want me to file a long-form affidavit at some point.

(Dkt. 11 at 5 (quoting Crim. Dkt. 92 at 50:21–51:4).)

But that passage says nothing about Officer Pirics' actions "before applying for the warrant." (Dkt. 11 at 5.) Rather, it concludes a line of questioning about Officer Pirics' interview of Vivas during the search—*after* he had obtained the warrant. Officer Pirics testified that he did not remember asking Vivas if he needed an attorney (Crim. Dkt. 92 at 49:10–14), that he handcuffed Vivas (*id.* at 49:21–23), and that he asked another officer to sit with Vivas while he

7

made a telephone call (*id.* at 50:10–14). The passage Vivas quotes in his § 2255 brief makes more sense when read in conjunction with the preceding question:

> Q  So at that point, he was in custody?
>
> A  I don't know I would say he was in custody; but I was worried that as has been the case with these types of investigations, sometimes somebody will make an attempt to hurt themselves; and I didn't want that to happen. At that point, I didn't know if he was going to be in custody or not.
>
> Q  You thought that the prosecutor in Hamilton County might say, "No, we don't have enough"?
>
> A  Yeah, I didn't know what they would -- if they would want to outright it or not.
>
> Q  Did you think it was a close call?
>
> A  Did I think it was a close call?  For Hamilton County, yeah.  I didn't know if they would want an outright arrest or if they would want me to file a long-form affidavit at some point.

(Crim. Dkt. 92 at 50:15–51:4.)  Officer Pirics did not question whether the Hamilton County prosecutor would find probable cause to seek a search warrant.  Rather, he questioned whether the prosecutor would find probable cause to arrest and detain Vivas *after* the search.

To show ineffective assistance, Vivas "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance."  *Wyatt*, 574 F.3d at 458.  He has not shown any act or omission related to Officer Pirics' consultation of a prosecutor before seeking the warrant.  To the contrary, he contends that Mr. Ansell was deficient for failing to bolster an argument with evidence that did not exist.  That is not a basis for relief under § 2255.[1]  *See Warren v. Baenen,* 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."); *United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004) ("First, counsel

---

[1] Mr. Vivas' § 2255 counsel has ably represented many criminal defendants and habeas petitioners in this Court.  This case serves to remind all litigants of the necessity of supporting arguments with careful citations to evidence presented in its true context.  This is critical to the efficient and just resolution of every case and doubly so where, as here, a litigant's claim also amounts to allegations that an attorney failed his client or an officer knowingly acted in bad faith.

8

cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues. Second, it is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome.").

**B.     Sentencing Hearing**

Vivas also asks the Court to find that Mr. Hayes deprived him of effective assistance by failing to capitalize on Ms. Mindrum's misstatement at the sentencing hearing. According to Vivas, Ms. Mindrum's statement that she would move for an additional acceptance-of-responsibility reduction "waived" the Government's stipulation in the plea agreement that it would not move for that reduction. (Dkt. 11 at 10–11.) He further argues that the Court could not lawfully remind Ms. Mindrum that her answer conflicted with the plea agreement and that, had Mr. Hayes objected on those grounds, the Court would have had no choice but to grant Mr. Hayes an additional deduction. *Id.*

In the plea agreement, Mr. Hayes and the Government agreed to various stipulations about his Sentencing Guidelines calculations. (Crim. Dkt. 45 at ¶ 39.) Among them, the parties agreed that Vivas was entitled to a two-level acceptance-of-responsibility reduction but not a third. *Id.* at ¶¶ 39(g)–(h). The parties also agreed that the plea agreement was binding and could not be modified "except in writing, signed by all parties and filed with the Court, or on the record in open court." *Id.* at ¶ 50.

The Court does not accept Vivas' assertion that the doctrine of waiver governs this issue. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1983)).

First, Ms. Mindrum's statement to the Court did not involve the relinquishment or abandonment of a right. The plea agreement did not grant the Government a right not to

9

recommend a third acceptance-of-responsibility reduction. The Government was never obligated to recommend such a deduction; the plea agreement merely documented that it would not make such a recommendation.

Second, the record leaves no doubt that Ms. Mindrum's statement was mistaken rather than intentional. Ms. Mindrum quickly recognized that her statement that she would move for an additional reduction contradicted the plea agreement and set the record straight. If she had *intended* to offer an additional reduction, she would not have backtracked so quickly, and she presumably would have made a record to modify the plea agreement. (*See* Crim. Dkt. 45 at ¶ 50.)

Third, it is the Court's responsibility to review the terms of the plea agreement at the change of plea hearing. Under the terms of the plea agreement, the parties stipulated that Vivas was entitled to only two reductions for acceptance of responsibility. Had he insisted on another, it is not clear that the Government would have honored the remainder of the agreement—much less that the Court would have been able to bind the Government to its terms. *See, e.g.*, *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013) ("As a general rule, the government is bound to honor the promises it makes to induce the defendant to plead guilty, … but a defendant who substantially breaches a plea agreement cannot force the government to uphold its end of the bargain."); *United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003) ("In general, a defendant's substantial breach of an unambiguous term of a plea agreement frees the government to rescind the deal.").

Finally, the Court is not persuaded by Vivas' invocation of *United States v. Sainz*, 933 F.3d 1080 (9th Cir. 2019). (*See* Dkt. 11 at 11.) In *Sainz*, the Sentencing Commission made changes to the Guidelines after the defendant's sentencing that would have lowered his Guidelines range. *Sainz*, 933 F.3d at 1082. The defendant moved in writing for a sentence modification pursuant to 18 U.S.C. § 3582(c)(2) a year after being sentenced. *Id.* The court denied the motion on grounds

that the defendant waived the right to seek relief under § 3582 in his plea agreement—even though neither party raised waiver. *Id.* at 1082–83. The Ninth Circuit reversed, finding that the government waived the waiver defense by failing to raise it and that the district court abused its discretion by invoking the defense *sua sponte*. *Id.* at 1087–88.

This case follows a different factual path. The parties agreed to a Sentencing Guidelines calculation, including two (but only two) reductions for acceptance of responsibility. At sentencing, the Government indicated it would proceed with a third reduction, contrary to the plea agreement. The Court asked for clarification as it is required to do when it notes discrepancies in the parties statements concerning the terms of a plea agreement. Ms. Mindrum recognized she misspoke, and Mr. Hayes stood by the plea agreement. Neither party waived a right, and the Court did not invoke a defense.

"Mistakes are inherent in the human condition. All judges '—and all lawyers—' make them …." *LM Insurance v. ACEO, Inc.*, no. 08 C 2372, 2010 WL 1655206, at *1 (N.D. Ill. Apr. 16, 2010). "[T]he law frowns on playing 'gotcha' and relying on a blunder to gain an opportunistic advantage." *Id.* (citing cases). Vivas has not demonstrated that Mr. Hayes could have leveraged an advantage from Ms. Mindrum's momentary lapse, much less that he behaved unreasonably by failing to pursue one.

## IV. CONCLUSION

For the reasons explained in this Order, Vivas' Motion for relief pursuant to § 2255, Dkt [72], is **DENIED** and this action is **dismissed with prejudice**. The **Clerk is directed to:**

1) enter final judgment in this action;

2) docket a copy of this order in the criminal case, *United States v. Vivas*, No. 1:18-cr-00004-TWP-DML-1; and

3) terminate the § 2255 motion, Dkt. [72], pending in the criminal case.

## V. DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Vivas has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

**SO ORDERED.**

Date:  8/16/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brandon Sample
BRANDON SAMPLE PLC
brandon@brandonsample.com

MaryAnn Totino Mindrum
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
maryann.mindrum@usdoj.gov